Thank you very much. Agenda number three today is number 127304. People, the State of Illinois v. Toralyn Williams. Counsel for the appellant. Are you prepared to proceed? Good morning. May it please the Court. My name is Ashley Johnson with the Office of the State Appellate Defender, representing the petitioner Toralyn Williams. This case asks, what specific pleading standard a young adult offender must meet in order to meet in order to survive a first-stage summary dismissal of an initial pro se post-conviction petition claiming that his mandatory life sentence violates proportionate penalties? This Court invited emerging young adults like Mr. Williams to make as-applied challenges to their mandatory life sentences in a post-conviction petition in Harris, House, and Thompson. In his initial pro se petition, Mr. Williams did just that. He invoked Miller and his progeny and cited to scientific studies concerning the brain development of young adults to argue that at 22 years old, he was similar to a juvenile and therefore his mandatory life sentence was unconstitutional as applied to him. The circuit court and majority appellate court incorrectly dismissed his petition based upon his age and the lack of specificity in his allegation. This reasoning was contrary to the established principles for a first-stage post-conviction petition. At the first stage, Mr. Counsel, he cited brain research. Yes. But what facts specific to him did he advance in this first stage? So he argued that his age being 22 was, that was the fact, that and the brain science were the facts that applied to him to demonstrate that his brain was similar to that of the juveniles. And so while those allegations concerning the brain development are broad, they're clearly intended to include Mr. Williams and they therefore serve as the factual allegations to kind of, you know, jumpstart his petition so that then he can go to the second stage and develop his claim further. At the first stage, Mr. Williams was only required to present the gist of a constitutional claim that was arguable in law and fact and not fanciful or contradicted by the record. Mr. Williams's proportionate penalty challenge to his mandatory life sentence states the gist of a constitutional claim. This court and other appellate courts have held that Mr. Williams's claim is arguable in law. Moreover, Mr. Williams's claim has an arguable basis in fact and is not contradicted by the record. Mr. Williams received a mandatory life sentence and there's nothing in the record that indicates that he was not similar to a juvenile or that a trial court heard and considered any of the brain science to which Mr. Williams has cited. It would be indeed the brain science that he cites can be corroborated and is objective in nature and directly relevant to the Miller inquiry. And so it would be unreasonable to expect a pro se petitioner like Mr. Williams's claim or the legal elements of that claim. Additionally, there are some facts contained in the record that can arguably be read as support for Mr. Williams's claim. For instance, there's evidence that he may have been susceptible to the pressure of his older co-defendant, which exemplifies one of the hallmark characteristics of youth that was described by Miller. Nonetheless, the mandatory nature of Mr. Williams's sentence, attempting to apply, given the mandatory nature of his sentence, attempting to apply Miller under the proportionate penalties clause would have been futile at Mr. Williams's original sentencing hearing because this court never invited adult defendants like Mr. Williams to raise such as applied challenges to their mandatory life sentences in a post conviction until 2015. Counsel, would you, you cited Carrasquillo in your brief. Would you flesh that out a little bit for me? Yes. So in Carrasquillo, that was a successive post conviction petition. But the main reason that I cited to that was because it brought up a very good point that allegations like these claims like these that pro se petitioners make when they're challenging their mandatory life sentences is kind of a catch 22 because they can't show from the record necessarily that their claim has merit. But in order for them to be able to demonstrate that their claim has merit, they have to be able to develop the record. So they it's kind of if they're at the first stage, they're being told that they must present all of this evidence or make all these claims and everything, but they don't know those claims themselves. Then they can't demonstrate that their claim is meritorious and they need to go to the second stage in order to demonstrate that the claim is meritorious. But you have courts that will prevent them from going to the second stage to flesh out their claims because they haven't presented enough evidence at the first stage when they aren't necessarily required to do that. If there are no additional questions for me, I'm going to briefly conclude. So the proportionate penalties clause states that all penalties must be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship. In this case, it was a murder of five people. And so how does that seriousness of those murders relate to the proportionate penalties clause here? Well, I think that the seriousness of the offense, I would never say that this case was, the facts of this case were not serious. This was a heinous crime. I think, though, that when it comes to the proportionate penalties clause, you want to also consider the shock to the moral consciousness. And I don't think it's just contained to just the facts of the case themselves. Here we have someone who is saying that they were like a juvenile and yet they received a mandatory life sentence. And so I think that would be what would shock the moral consciousness, that you have someone who's like a juvenile who's saying I'm a juvenile and I got a mandatory natural life sentence, so I have no opportunity ever for parole. I think that goes against what we in Illinois have held to be very important about juveniles, that they have rehabilitative potential. And so that's why we don't want to just deny someone who's a juvenile or who's juvenile-like to not ever have the opportunity to demonstrate that they have rehabilitative potential such that they could try, just have an opportunity at parole. That's not to say they'll get it, but, you know, just to get an opportunity to try to get it. In short, in raising his as-applied challenge to his mandatory life sentence in an initial pro se post-conviction petition, Mr. Williams followed the path laid out by this court in Thompson, Harris, and House. Here, Mr. Williams argued that based upon the scientific research he cited to, he was similar to a juvenile at 22 years old, and therefore his mandatory life sentence was unconstitutional as applied to him. This was sufficient for a first stage petition. Because his claim was neither legally nor factually frivolous or fanciful, his petition should have been advanced to the second stage where a factual record could have been developed. Requiring Mr. Williams to provide evidence that his brain had not finished developing at 22 or that he was less future-oriented because his brain was not finished developing is an overly formalistic legal precision that is not required at the first stage. Accordingly, Mr. Williams respectfully requests this court reverse the appellate court's judgment and remand the case for further post-conviction proceedings. Thank you. Any questions? Thank you very much, ma'am. Counsel for the appellate. May it please the court, counsel, I am Assistant Attorney General Gopi Kashyap on behalf of the people of the state of Illinois. Petitioner is raising an as-applied challenge to the multiple murder sentencing statute under the Proportionate Penalties Clause based on his relative youth. This claim, a challenge to a mandatory sentencing scheme, has existed in Illinois precedent for over a half century. The principles underlying that claim have existed in Illinois precedent, and the standards governing that claim have existed in Illinois precedent. This claim was available to Petitioner long ago at the time of sentencing. But yet he calls this claim an as-applied Miller-like challenge under the Proportionate Penalties Clause. It is unclear exactly what that is, so I'd like to try to unpack what it might be. Miller itself, as the court has repeatedly held recently, does not apply to the Proportionate Penalties Clause. It is an Eighth Amendment decision that prohibits mandatory life sentences for juvenile homicide offenders. It says nothing about the Proportionate Penalties Clause. It does not change the standards that apply under the Proportionate Penalties Clause. And in the end, Miller itself, the legal rule, does not apply under the Proportionate Penalties Clause. So then the question is, is he trying to raise a claim that is similar to Miller in that he's asking for a categorical rule from this court under the Proportionate Penalties Clause that would ban life without parole for all young adult offenders? That is the substantive rule that Miller articulated. But, of course, a categorical rule under the Eighth Amendment is not an as-applied claim, as the court noted in Jones v. Mississippi. A categorical rule is a different flavor and is unique to the Eighth Amendment. The Proportionate Penalties Clause is concerned with an as-applied challenge to the statute. The statute that the General Assembly enacted, where it enacted a mandatory minimum sentence. And just like any other as-applied challenge, the court has treated these challenges the same. The defendant must show that as applied to him, when this statute is applied, the sentence is wholly disproportionate to his offense, such that it shocks the moral sense of the counsel. So what would the defendant, in your opinion, be required to put before the court in his petition to meet the standard that he gets to go to a second stage? For this case, specifically, Petitioner had within his knowledge all of the information about his background, his childhood, the mitigating circumstances. In the end, youth is mitigating. We've known that childhood upbringing could be something that he could cite to. Perhaps his family had difficulties. Does it matter that he was proceeding pro se? It doesn't, because these are things within his knowledge. They're about his background, his experience, his education, his mental status. He would know if he had been diagnosed with anything. He would know these facts and circumstances. And as for the neurological research that seems to be the primary focus of Petitioner's claim, this court has already held that Illinois law has long recognized the mitigating effect of youth. And so he could have argued that all of these circumstances, when you look at everything about him, his sentence is wholly disproportionate to his offense. Well, I'm going to ask my what was the harm question. We agree that stating a gist of a constitutional claim is the standard. And assume for the moment that that was done here. What's the harm in allowing him to go to the second stage to develop it? Well, as for whether there's a harm, I think it would simply be inconsistent with the case law that the court has established for the first stage, which is that you have to state an arguable claim. Well, I gave you in my hypothetical. Let's assume that he states that we have a gist of a constitutional claim here. And sometimes that's debatable. But assuming for the purpose of my question that he states a gist of a constitutional claim, wouldn't that allow him to go to the second stage? And what's the harm? If not, why not? Why do you think not under these facts? I think if he states the gist of a constitutional claim, if I'm understanding the court's question, then he's satisfied both the factual and legal basis. So he's made a non-advanceable factual allegations and an arguable claim of legal merit. That would, of course, satisfy the first stage and he could go. The other problem is that this claim is forfeited. He could have raised it at sentencing, as Leon Miller successfully did. He needed to raise it at sentencing and a motion to reconsider a sentence. So putting aside whether the constitutional claim itself has arguable merit, the claim is barred by forfeiture principles. So the harm would be that- Forfeiture is a limitation on the parties, not the court. But I would also point out that in your brief, although you argued you're arguing forfeiture now, you didn't raise that argument in the appellate court yourself, did you? No, Your Honor. The people did not raise that argument. But, of course, the issue on review is the trial court's dismissal of the petition. This court reviews de novo the first stage dismissal of the petition. And what we know here is that Petitioner actually recognized that his trial attorney should have raised the claim. Petitioner argued in his petition that trial counsel was ineffective for not raising the claim. And so the claim itself was available at the time of sentencing. Petitioner himself recognized it. And then the trial court found the ineffective assistance of counsel claim that Petitioner had raised to be frivolous and patently without merit. So this court is reviewing the petition and whether the petition itself states it's just a constitutional claim. And as part of that petition, Petitioner implicitly recognized that counsel could have raised this claim, and so that claim is forfeited for the court's review. But turning back to sort of ‑‑ I just want to turn back to what this means, what an as-applied not-alike challenge is, and really what the burden is on Petitioner here. We are talking about the constitutionality of the statute. And so the burden is on Petitioner to overcome the presumption that the General Assembly acted within its authority in requiring a life sentence for his crimes. And Miller itself has nothing to do with this. And that is because under the Illinois Constitution, the question is only related to the specific circumstances of the Petitioner's offense and crime. And here, as Justice Rochford noted, Petitioner's crime was extremely serious, which is why his claim is indisputably meritless. He killed five people. It was a planned attack. It was a planned robbery. He and his co‑defendant armed themselves with guns. They went into the house. They killed every single person that was in that house at the time. They shot each of them in the head. And then they systematically went through the entire house to find anything of value that they could. Three of these victims were shot at close range. Petitioner admitted that he shot two of them. At the end of the day, this crime is so serious, and the General Assembly was within its authority to say that mandatory life is the appropriate sentence for this Petitioner. I think there was a question about whether Petitioner had alleged any facts, and I sort of touched on that. But it's important to note that Petitioner needed to present the mitigating evidence in his petition. He could have presented it, and he needed to present it. And what's more is that this mitigating evidence was all part of within Petitioner's knowledge, as I touched on. I want to note that he was 29 at the time of the sentencing hearing, and he was 33 when he filed his petition. So this isn't a young defendant who is trying to raise his claim. This is a defendant who could have accumulated all of the information and put it in his petition, but he did not. Unless the Court has any further questions, we'd ask the Court to affirm the Appellate Court's judgment. Thank you, Counsel. Senator Abado, Counsel for the Appellant. So the State makes a very big—let me not eclipse. The facts of this case are heinous, as the State points out, as I 100 percent concede. But it's important that we don't only consider just the facts of the case when determining whether or not Mr. Williams was similar to a juvenile at the time of the offense. Many—there have been numerous Appellate Court decisions in which the Appellate Courts have allowed a pro se post-conviction petition to advance to the second stage. And those petitioners were of varying degrees of participation in their offenses. For instance, in People v. Herring, the petitioner was convicted of two counts of first degree murder, and he was the principal. And nonetheless, the Appellate Court stated that he had stated enough of a claim to go to the second stage. And the Appellate Court noted that this—he wouldn't have been able to raise this kind of an argument at the original sentencing hearing, because this kind of as-applied challenge at the time, because of the mandatory nature of the sentence, would have been unavailable. It would have been futile. It would have fallen on deaf ears. And I think the same thing applies to here. What kind of evidence in that case did the petitioner allege in his PC? So he alleged that he may have had ADHD and that he may have had an issue with impulsivity. And then he cited to the same sort of science that Mr. Williams cited to. And while that is, you know, that was sufficient for the Appellate Court, and it's a little bit more than Mr. Williams cited, I don't think— I didn't cite anything. There's no doubt that this Court has left the door open for a certain fact to be presented that perhaps could raise to the level as-applied constitutional claim. So the question is, what is that level, or at least what is enough for the pleading stage? Did he plead anything about him specifically? No, he did not. Other than his age, he did not. And I think that it's important to note that in Edwards, this Court found that with different pro se petitioners, there may be certain facts about their lives and things like that that they don't know necessarily applies to their claim. And I think that the first stage—the first stage low threshold for a post-conviction petition, it doesn't say how much—how many allegations, how many, you know, facts you must allege. And so just because one pro se petitioner might, you know, know to allege more information about themselves than another one, I don't think that it's necessarily fair to penalize the petitioner for having a post-conviction petition. It's fair to penalize a petitioner that may not know that the things that happened in his life play a role in his legal claim. I think that's why we have the gist of a constitutional claim standard, and I also think that's the reason why Hodges recognized that these pro se petitions at the first stage should be liberally construed, because it's a way of sort of meeting each petitioner where they are in this legal process. So how liberally? You say 22-year-old, that's enough? Well, I think it's the 22-year-old plus the science that he cites, too. I think that is enough, that the brain development science and his age is enough to state the gist of a claim that he falls into that category, that he was similar to a juvenile. That's not to say that at the second stage, he'll be able to prove that he was just like a juvenile, but I think that's enough for him to get his foot in the door, at least, and have the help of appointed counsel to, you know, help him flesh out these additional facts about himself that may or may not exist. Counsel pointed out that, you know, he may have had some kind of a medical disorder of some sort, and he may have had some kind of a mental health condition, and he may have had some kind of a mental health condition. He may have had some kind of an illness or something that he knows about, but, you know, he didn't say anything. Well, he might not know that that fits within the frame of his legal claim. And so at the second stage, he would be, you know, afforded counsel to help him to flesh these, this claim out. Isn't that true in every first-stage claim? You know, the person, by definition, is incarcerated and alone and probably doesn't understand all of the legal consequences. And yet we have some standards that we've set before he could go to the second stage. There's got to be something else. Well, I think that if he had, if he had filed this petition and he was just, he just said, I was 22 and I was like a juvenile, and my sentence, therefore, violates proportionate penalties. If he didn't include any of this brain science or anything like that, then I think that does not state the gist of a constitutional claim. But I think by him bringing in this outside information, that does help to present the gist of a constitutional claim. If there are no additional questions for me, I will, once again, ask this Court to please reverse the appellate court's decision. And remand for further post-conviction proceedings and allow Mr. Williams the opportunity to develop his record in this claim at the second stage. Thank you.